IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RONALD DeSERVI**, <br><br> Plaintiff, <br><br> v. <br><br> **ROBINZINA BRYANT**, as Chair of the Illinois Concealed Carry Licensing Review Board, *et al.*, <br><br> Defendants. | Case No. 14 C 3881 <br><br> Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss [ECF No. 25]. For the reasons stated herein, the Motion is granted in part and denied in part.

**I. BACKGROUND**

The following facts are drawn from the allegations in Plaintiff Ronald DeServi's Complaint, which are taken as true for the purposes of deciding this motion to dismiss. *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). Plaintiff applied for a license to carry a concealed weapon under Illinois' Firearm Concealed Carry Act (the "Act"). 430 Ill. Comp. Stat. 66/10. Under the Act, the Illinois Department of State Police ("ISP") "shall issue a license to carry a concealed firearm" if the applicant:

(1) meets the qualifications of Section 25 of [the] Act;

    (2)    has provided the application and documentation required in Section 30 of [the] Act;

    (3)    has submitted the requisite fees; and

    (4)    does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the Concealed Carry Licensing Review Board.

*Id.* 66/10(a).

Any law enforcement agency, however, may object to an applicant receiving a license if the agency has "reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." *Id.* 66/15(a). If an agency objects, the application and the objection are reviewed by the seven-member Concealed Carry Licensing Review Board ("Board"). *Id.* 66/15-20. The Board then considers only the application and the objection materials to decide whether to grant a license, unless at least four Board members vote to "request additional information [or testimony] from the law enforcement agency, [ISP], or the applicant." *Id.* 66/20(e).

Generally, the Board has 30 days from when it receives an objection to issue a decision. *Id.* 66/20(f). The Board will issue a license unless it finds "by a preponderance of the evidence that the applicant poses a danger to himself or herself or others, or is a threat to public safety." *Id.* 66/20(g). If the applicant's license is denied, the applicant may challenge the Board's decision in state court. *Id.* 66/87(a).

In this case, the Board found that Plaintiff satisfied the first three requirements above, but failed the fourth based on a law enforcement agency's objection to his applications. The Board issued a written decision to Plaintiff that stated the Board found "by a preponderance of the evidence that you pose a danger to yourself or others/are a threat to public safety." [ECF No. 1, ¶ 15]. The decision also advised Plaintiff of his right to appeal the decision.

Instead of seeking review of the Board's decision in state court, however, Plaintiff filed suit in federal court against the Board, its members, the ISP, and two officials within the ISP. In Count I, Plaintiff alleges that the Act's licensing process deprived him of his procedural due process rights under the Fourteenth Amendment. Count II alleges that the Act is unconstitutional, both facially and as applied to Plaintiff. Plaintiff urges the Court to extend the First Amendment's prior restraint analysis to his Second Amendment case and find that the Act imposes an unconstitutional prior restraint on his right to carry a firearm in public.

Defendants have moved to dismiss the Complaint, arguing that (1) under Federal Rule of Civil Procedure 12(b)(1), the Court should abstain from hearing Count I pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and (2) both counts fail to state a claim under Rule 12(b)(6). The Court will address each argument in turn.

## II. LEGAL STANDARD

The Supreme Court recently clarified the scope of *Younger* abstention. *See, Sprint Commc'ns, Inc. v. Jacobs,* 134 S.Ct. 584, 588 (2013). *Younger* abstention is appropriate in "exactly three classes of cases: where federal jurisdiction would intrude into ongoing state criminal proceedings, or into civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Mulholland v. Marion Cnty. Elec. Bd.,* 746 F.3d 811, 815–16 (7th Cir. 2014) (quoting *Sprint Commc'ns, Inc.,* 134 S.Ct. at 588). *Younger* abstention is the exception, not the rule, and in examining whether a state civil proceeding calls for abstention, "the critical consideration . . . is how closely [the state proceeding] resembles a criminal prosecution." *Id.*

A motion to dismiss under Rule 12(b)(6) requires the Court to analyze the legal sufficiency of the complaint, not the factual merits of the case. *Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). The complaint must do more than recite the elements of a violation; it must plead facts with sufficient particularity so that the right to relief is more than a mere conjecture. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

### III. ANALYSIS

#### A. *Younger* abstention — Count I

Plaintiff's Complaint alleges that the Act's licensing scheme deprived him of his Second Amendment rights without constitutionally sufficient due process. Defendants argue that the Court should abstain from hearing this count because a ruling on it would interfere with a state agency's decision to deny Plaintiff a concealed carry license.

Defendants have failed to demonstrate that this case fits into one of the three exceptional situations in which *Younger* abstention is appropriate. *Mulholland,* 746 F.3d at 816. There are no ongoing criminal proceedings here, and Defendants have not argued that the Board's review constitutes a civil proceeding "that implicate[s] a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc.,* 134 S.Ct. at 588. Defendants' argument for the application of *Younger* abstention stems from their characterization of the Act's licensing process as a civil enforcement proceeding. According to Defendants, a law enforcement agency's objection to a license application constitutes a "complaint" against the applicant. If the Board denies the application, Defendants contend that the Board has simply "enforced the Act's requirements against" the applicant pursuant to the "complaint." [ECF No. 28 at 4].

Defendants' characterization of the Act's licensing process as a civil enforcement proceeding misses the mark. The Seventh Circuit has said that, "at least after *Sprint,*" *Younger* abstention is not warranted unless the state proceeding is a "quasi-criminal proceeding." *Mullholland,* 746 F.3d at 816. The analysis therefore turns on how closely the Act's licensing scheme resembles a criminal proceeding. In this case, there are very few similarities between the two.

In most cases, a criminal or quasi-criminal proceeding is initiated by the state in order to "sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act." *Sprint Commc'ns, Inc.,* 134 S.Ct. at 592. In this case, Plaintiff initiated the Board's proceedings by submitting a license application. To accept Defendants' argument would be to find that Plaintiff initiated a quasi-criminal proceeding against himself. Defendants have not cited any case in which a federal court abstained under *Younger* due to state court proceedings initiated by the federal plaintiff. To the contrary, each of the cases Defendants cite in support of this argument involve state-initiated criminal proceedings or civil enforcement proceedings. *See, Guillemard-Ginorio v. Contreras-Gomez,* 585 F.3d 508, 510 (1st Cir. 2009) (state agency sanctioned federal plaintiffs "for purported Insurance Code violations"); *Nelson v. Murphy,* 44 F.3d 497, 501 (7th Cir. 1995) (involving "continuations of the original criminal

prosecutions"). That the Board enforced the Act's provisions does not transform the proceeding into a quasi-criminal, civil enforcement proceeding. *Younger* abstention therefore is inappropriate in this case.

Because the Court will not abstain under *Younger,* the Court must address whether Plaintiff's Complaint properly states a claim for relief under Rule 12(b)(6).

**B. Sufficiency of Plaintiff's Due Process Claim – Count I**

Plaintiff alleges that the Act's licensing scheme does not provide adequate procedural due process. "To state a procedural due-process claim, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park,* 528 F.3d 530, 534 (7th Cir. 2008). Defendants' argument for dismissal rests solely on the second prong; the Court therefore presumes for the purpose of deciding this Motion that Plaintiff has been deprived of a protected interest, as alleged in the Complaint. *See, Dehorty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir. 1996).

"In evaluating what process satisfies the Due Process Clause, . . . the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Leavell v. Ill. Dep't of Natural Res.,* 600 F.3d 798, 804 (7th Cir. 2010) (internal quotation marks omitted). For claims based on established procedures, the

state is in a position to provide a pre-deprivation hearing because the established procedures enable the state to predict when a deprivation might occur. *Id.* In these circumstances, "post-deprivation procedures will not, *ipso facto*, satisfy due process." *Id.* If, however, the state's action in depriving a right is "random and unauthorized," a "meaningful post-deprivation remedy" alone can satisfy due process. *Id.* In either instance, the analysis turns on "whether sufficient state-law protections *exist*," regardless of whether the federal plaintiff took advantage of them. *Michalowicz,* 528 F.3d at 534.

Defendants argue that the Board's action here is "random and unauthorized" because there is no way to predict what the Board will do in any individual in case. Thus, according to Defendants, Plaintiff is not entitled to any pre-deprivation procedural process and the Court should look to the Act's post-deprivation procedures to determine if they are constitutionally adequate. *See, Veterans Legal Defense Fund v. Schwartz,* 330 F.3d 937, 939–40 (7th Cir. 2003).

Defendants' argument fails for several reasons. First, the Act explicitly authorizes the Board to do exactly what it did. The Act authorizes a law enforcement agency to object to any application, and it further authorizes the Board to deny any application if it finds by a preponderance of the evidence that the applicant poses a danger to himself, others, or the public. 430

Ill. Comp. Stat. 66/15(a), 66/20(g). Thus, rather than being "unauthorized," the Board acted entirely within the Act's framework.

Second, Defendants' argument fails because the Board's action here is not a "random" state action as that word is used in the due process context. For example, the Seventh Circuit in *Schwartz* dealt with "random and unauthorized" state action. *Schwartz,* 330 F.3d at 941. That case involved Illinois' Personnel Code, which required that veterans be hired over equally-qualified non-veterans in certain situations. *Id.* at 938-39. The Illinois Supreme Court had held that the Personnel Code provided veterans "an absolute hiring preference," after which the Illinois Governor's office issued a memorandum directing all state agencies to comply with both the Personnel Code and the supreme court's ruling. *Id.* Two non-veterans were hired for state jobs instead of the veteran plaintiffs, and the plaintiffs brought due process claims against various state actors alleging that the state deprived them of their right to preferential hiring. *Id.*

The court found that the state action at issue was "random and unauthorized" and, thus, post-deprivation procedures alone could satisfy due process. *Id.* at 941. The state action was considered "random and unauthorized" because, "[o]nly by acting in a manner 'patently inconsistent with Illinois law,' could the defendants deprive the plaintiffs of the hiring preference." *Id.* (quoting

*Easter House v. Felder,* 910 F.2d 1387, 1401 (7th Cir. 1990) (en banc)); *see also, Leavell,* 600 F.3d at 804–05 (finding that the plaintiff's claim was based on "random and unauthorized" state conduct when the Illinois Department of Natural Resources failed to give the plaintiff notice of a hearing that was expressly required by Illinois law). The court ultimately affirmed the district court's grant of summary judgment for the defendants because the plaintiffs had not shown that the available post-deprivation procedures were inadequate. *Id.* at 942.

Unlike the state actors in *Schwartz* who violated the law in allegedly depriving the plaintiff of a right, here, both parties agree that the Board did not stray from any of the Act's provisions but, rather, followed them exactly as written. The Board's actions are not "random" at all. To the contrary, although the Board's action in any single case might be unpredictable, the Act itself allows for some applications to be denied. The potential for deprivation is therefore "predicable and authorized" for due process purposes. *See, id.* at 940 (internal quotation marks omitted). Thus, the Court finds that Plaintiff's claim is based on the Act's established procedures, and therefore the availability of post-deprivation procedures does not, by itself, necessarily satisfy due process.

To determine the process due for claims based on established procedures, the Court must balance "the private interest . . .

affected by the official action[,] the risk of an erroneous deprivation of such interest[,] and . . . the Government's interest." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Plaintiff alleges that the Act's procedures do not satisfy due process under *Mathews* because (1) the Act does not require notification to an applicant regarding any law enforcement agency objection, (2) the Act does not automatically give an applicant the opportunity to be heard before the Board before it denies an application, and (3) the Act works to prevent some applicants from ever presenting their own evidence supporting their applications, because the Act only allows review of the Board's decision in state court under Illinois' Administrative Review Law, which "specifically limits judicial review to the administrative record." *Marconi v. Chi. Heights Police Pension Bd.,* 870 N.E.2d 273, 292 (Ill. 2006).

Defendants' Motion does not contest these allegations, nor does the Motion argue that the Act satisfies due process under *Mathews*. The Court therefore denies Defendants' Motion to Dismiss Count I.

### C. Sufficiency of Plaintiff's Prior Restraint Claim – Count II

Plaintiff alleges that the Act is unconstitutional both facially as applied to him because it requires "prior government permission" before "law-abiding citizens of Illinois" may exercise their Second Amendment rights. [ECF No. 1, ¶ 26.] Plaintiff asks

this Court to extend the First Amendment's prior restraint analysis to the Second Amendment.

Plaintiff acknowledges that neither the Supreme Court nor the Seventh Circuit (nor any other jurisdiction that the Court is aware of) has extended prior restraint analysis into the Second Amendment context. The Court declines Plaintiff's invitation to take that step here. Prior restraint analysis is appropriately confined to the First Amendment context because the framers included the free speech and freedom of the press clauses precisely to combat the practice of censorship that was common in England. *See, Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 716 (1931) ("[L]iberty of the press, historically considered and taken up by the Federal Constitution, has meant, principally although not exclusively, immunity from previous restraints or censorship."); *see also,* Michael L. Meyerson, *The Neglected History of the Prior Restraint Doctrine: Rediscovering the Link Between the First Amendment and the Separation of Powers*, 34 Ind. L. Rev. 295, 295 (2001) ("Oliver Wendell Holmes . . . declare[d] that the main purpose of the First Amendment was 'to prevent all such previous restraints upon publications as had been practiced by other governments.'") (quoting *Patterson v. Colorado ex rel. Attorney General of Colorado,* 205 U.S. 454, 462 (1907)).

The concerns regarding prior restraints are historically unique to the First Amendment. The Court is unaware of any similar

history surrounding the Second Amendment. The Court therefore declines to extend prior restraint analysis to the Second Amendment context and dismisses Count II.

### IV. CONCLUSION

For reasons stated herein, Defendants' Motion to Dismiss [ECF No. 25] Count I of Plaintiff's Complaint is denied. Defendants' Motion to Dismiss [ECF No. 25] Count II of Plaintiff's Complaint is granted.

**IT IS SO ORDERED.**

　
Harry D. Leinenweber, Judge
United States District Court

Date:10/3/2014